UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD C. SPAHR, | : | **CIVIL NO.  4:07-CV-0458** |
| | : | |
| Plaintiff | : | (Judge McClure) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

The plaintiff has brought this civil action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for Social Security disability insurance benefits.

On January 25, 2006, the plaintiff, Edward C. Spahr, applied for disability insurance benefits.  He claimed that he became disabled on December 1, 2005, as the result of

depression, post traumatic stress, high blood pressure and dizziness and blackouts.

The claim was denied initially and on reconsideration. The plaintiff filed a request for a hearing, and hearings were held before an administrative law judge (ALJ) on July 19, 2006, August 9, 2006 and October 25, 2006. (Tr. 416-457).

At these hearings the plaintiff and a vocational witness testified. (Tr. 420-457).

Mr. Spahr, the plaintiff, stated in his testimony that he is being treated by Dr. Wallover for bipolar disorder, manic depression, insomnia and high blood pressure.  He sees Dr. Wallover once a month.  His past work was factory work.  His last job was to run wood through a machine.  He could not do that job any longer.  He can not bend over to lift the wood. He gets dizzy and falls over.  He had another, earlier factory job for five years which the job also involved bending over. Before that, he had a job working for a furniture manufacturer.

2

Mr. Spahr reviewed the medications that he is taking. He takes medication for his emotional and mental impairments and for his insomnia.

He stated that he is not drinking alcohol, and that he stopped drinking when he got out of rehab.  He does not have a drivers license.  He rides a bicycle.  He goes to the New Hope Ministry for counseling on a daily basis and this helps him with his depression.

He lives alone in a trailer.  He takes care of his personal needs.  He stated that he feels that he could do a simple job not requiring bending over or exerting himself.

Mr. Spahr stated that he applied for Social Security disability benefits because of his dizzy spells, his medications and his traumatic experiences.  His traumatic experiences were his claustrophobic reaction to the imprisonment he served and his blackouts.  He has experienced as many as three blackouts a day, lasting five to ten minutes each.  Although he had one beer to drink in recent days, even

3

though he is not supposed to drink while taking his medication(s), he does not think that his drinking is playing a role in his dizzy spells.

His doctor, Dr. Wallover, is treating him for bipolar disorder, his manic depression and his insomnia.  While his lack of sleep due to insomnia renders him tired during the day, he does not usually nap during the day.  Rather, he stays busy reading, watching television and doing household chores.  He does not drive, both because he does not have a drivers license and because he is concerned that due to his tendency toward dizziness he would be a hazard to other persons.

Mr. Spahr stated that his right shoulder condition prevents him from reaching overhead.  He can not climb ladders due to his dizziness, and his dizziness prevents him from bending over.  However, although he takes five medications, he does not take a medication that is intended to help him not be dizzy.

Mr. Spahr stated that he sometimes falls when he blacks out.  He had fallen four times in the prior month, breaking ribs on one occasion.

A vocational witness stated in his testimony that Mr. Spahr's past work was medium and heavy.  He stated that a twenty-five-year-old man with a twelfth grade education and with major depression, post traumatic stress disorder and dizziness with an unknown etiology, who has episodic dizzy spells requiring him to sit down, can perform substantial gainful activity if he can stand, walk or sit for eight hours, can lift and carry ten pounds frequently, and can lift and carry twenty pounds occasionally.  Specifically, the vocational witness stated, the person can work as a sorter in the food industry, can work as a final assembler, and can work as a stuffer.  If the person's ability to respond to work pressures were more than moderately impaired, the vocational witness stated, the number of jobs in the economy that the person could perform would be reduced by fifty percent.  If the person had blackouts during the workday, not involving falling over, one or two days a month, an employer might tolerate that.  If more

than four times a month, even if not involving falling, it would probably not be tolerated by an employer.

On November 2, 2006, the ALJ issued his decision denying the plaintiff benefits. (Tr. 16-22).  The Appeals Council denied the plaintiff's request for review (Tr. 4-5, 8-10), making the ALJ's decision the final decision of the Commissioner.

The plaintiff filed his complaint with this court on March 12, 2007.  The defendant filed an answer to the complaint and a copy of the administrative record on May 2, 2007. Pursuant to Local Rules 83.40.4 and 83.40.5, the plaintiff filed his brief on May 28, 2007 and the defendant filed his brief on June 25, 2007.

If the Commissioner's decision is supported by substantial evidence it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.

1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence

7

must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id*. at 706-707.  In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole.  *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled.  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he is unable to engage in his past relevant

8

work.  If the claimant satisfies this burden, then the
Commissioner must show that jobs exist in the national economy
that a person with the claimant's abilities, age, education,
and work experience can perform.  *Mason v. Shalala*, 994 F.2d
1058, 1064 (3d Cir. 1993).

In this case the ALJ determined that the plaintiff has
not engaged in substantial gainful activity since the alleged
onset date, that he has impairments that are severe, that his
impairments do not meet or equal any listed impairments, and
that he is not able to perform any of his past relevant work.
The ALJ further determined that the plaintiff has the residual
functional capacity to perform jobs identified by the
vocational witness.

On the basis of these findings, the ALJ found the
plaintiff not to be disabled.

The plaintiff argues that there is not evidence that
supports the finding of the ALJ that the plaintiff "should be
able to respond properly to work pressures in a usual work

9

setting as well as respond appropriately to changes in a routine work setting."  The plaintiff points to Dr. Schneider's report of moderate limitations in these areas and to the absence of other evidences in these areas.

The plaintiff in his testimony did not state that he is limited in this way.  The doctor's report does not refer to the limitation as serious or marked, but as moderate.

Although the burden shifted to the Commissioner to show that the plaintiff can perform work other than past relevant work, the ALJ did not have an evidentiary basis presented before him giving rise to his consideration of a mental impairment relating to work pressures and changing work assignments.  The plaintiff acknowledges that the report of Dr. Schneider is not plainly declarative of any marked limitation involving workplace pressures and changes in job routines and assignments.  But even if there were some basis presented to support a reasonable inference of a serious limitation involving work pressures and changing work assignments, the plaintiff's own description of such pressures and apprehensions

10

would be critical.  The plaintiff's testimony did not address the subject.

The plaintiff argues that the ALJ failed to develop the record by seeking further clarification from Dr. Schneider. However, we believe that the plaintiff failed to develop the record by describing his reactions to workplace pressures and changes in job assignments.  Although the burden had shifted to the Commissioner, the ALJ did not need to consider impairments not even mentioned by the plaintiff.

The plaintiff argues that the ALJ failed to take in to account his dizzy spells and blackouts.  In this area, the plaintiff did develop a record, and the ALJ has failed to accord due weight to the record development by the plaintiff or to show a basis for discounting the plaintiff's evidence.

The ALJ was apparently impatient during the initial hearing with the plaintiff's testimony about his dizziness and blackouts.  *See* Tr. 430-431.  The ALJ apparently considered his "real impairment" to be a physical impairment.  But, *See* Tr.

11

18.  But the plaintiff did in any event testify under oath that he experiences frequent blackouts. (Tr. 444-449).

Despite the plaintiff's sworn testimony, the ALJ found that the plaintiff had not established repeated episodes of syncope or blackouts. (Tr. 19).  The ALJ also found that some incidents of blackouts would be acceptable to some employers, basing that finding upon testimony of the vocational witness. As the plaintiff's brief exemplifies, the plaintiff's evidence of frequent blackouts, in addition to his sworn testimony, is the June 28, 2006 letter from Dr. Wallover. (Tr. 236).  Dr. Wallover's letter _____ repeats what was told to her by the plaintiff.  Whatever corroboration it does or does not provide, the record contains evidence that the plaintiff has frequent blackouts.

The ALJ considered the plaintiff's blackouts in the context of the decision whether he has a listed impairment. (Tr. 18-19).  The ALJ found no listed impairment or equivalent. Except for general findings that "the claimant's statements concerning the intensity, persistence and limiting effects of

12

[his blackouts] are not entirely credible" (Tr. 19-20) and that

"the record does not establish the claimant's blackouts are as

frequent as alleged" (Tr. 19), no finding is made concerning

the frequency, duration or material effect of the plaintiff's

blackouts.  The ALJ elicited testimony from the vocational

witness about the impact of blackouts on a person's ability to

perform a job, and mentioned the testimony in the Decision (Tr.

19), but made no related findings about the frequency, duration

or effect(s) of Mr. Spahr's blackouts.  The ALJ stated that Mr.

Spahr's blackouts are not as frequent "as alleged," but fails

to determine how frequent they are.  He also fails to

acknowledge that the plaintiff did not only allege blackouts,

but rather had testified under oath about his blackouts.  The

ALJ speaks as though the plaintiff's testimony is not a part of

"the record," and as though the plaintiff did not provide

evidence that he has blackouts, but where the plaintiff's sworn

testimony relates the frequency, nature and effect of his

blackouts, the ALJ's reference to "allegations" and his

implication that a party's own testimony is not a part of "the

record" must be critically viewed.  Similarly, the general

reference to "the record," without further description as to

13

specific factual content, as something that trumps and defeats

the specific sworn testimony of the plaintiff, must be

critically viewed.  In this critical view of it, there is the

plaintiff's unimpeached testimony that he has frequent

blackouts.

In finding the residual functional capacity of Mr.

Spahr, the ALJ factored in to the findings no consideration at

all of Mr. Spahr's blackouts. (Tr. 21-22).  Rather, the ALJ

accepted as an accurate description of Mr. Spahr the

description that had been given to the vocational witness in

the first hypothetical question that the ALJ has presented to

the vocational witness. (Tr. 452-454).  Implicitly, the ALJ

rejected in total other limitations such as were incorporated

in to counsel's hypothetical question. (Tr. 454-456).  The ALJ,

therefore, must be seen to have rejected entirely the fact of

Mr. Spahr's blackouts, even though he had ostensibly found them

to have been established in "the record" but not to the extent

that the plaintiff had "alleged."

The plaintiff is an applicant whose employment record does not constitute a significant part of the disability application record, although he does have a record of factory work from 1990-2000.  His personal history includes significant alcoholism and a term of imprisonment.  Although he has physical impairments, depression, insomnia and headaches, the adjudication of his claim and the appeal concern principally his dizziness and blackouts.

The testimony of the vocational witness that an employer would tolerate up to four blackouts a month seems to us not to have been adequately tested and not to have been adequately shown to have been based upon some reliable knowledge and data.  The plaintiff stated that in some instances he has fallen and injured himself when he has had a blackout.  The ALJ made no finding that this important possible past or future occurrence was accepted or rejected.  The ALJ made no finding about the blackouts, and did not discuss the blackouts in a focused and explained way.  No medical opinion is cited to support the ALJ's implied finding that the

plaintiff does not have a vocationally relevant problem with blackouts.

Accordingly, the case should be remanded to the Commissioner for further consideration and, in particular, for more particular findings concerning the frequency, duration, severity and effects of his blackouts and concerning the vocational relevance of his blackouts.

It is recommended that this case be remanded to the Commissioner for further consideration consistent with this opinion.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  July 30, 2007.